### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | | |
|---|---|---|
| RASHAWN G. KILLIEBREW, | : | |
| Plaintiff, | : | Civil No. 21-8975 (RBK) |
| v. | : | **OPINION** |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the appeal filed by Plaintiff Rashawn G. Killiebrew from the decision of the Acting Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's application for Child Disability Benefits and Supplemental Security Income. For the reasons set forth below, the Commissioner's decision is **VACATED** and **REMANDED**.

**I.     LEGAL STANDARD**

   **A.  Sequential Evaluation Process**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses an established five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period.  20 C.F.R. § 404.1572. Second, the claimant must demonstrate that he has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that his condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that he cannot perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets his burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

B.  Review of the Commissioner's Decision

This Court reviews the ALJ's application of the law under a de novo standard and the ALJ's factual findings under a "substantial evidence" standard. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007) (citing 42 U.S.C. 405(g); *Williams v. Sullivan*, 970 F.3d 1178, 1182 (3d Cir. 1992); and *Mounsour Med. CR. v. Heckler*, 806 F.3d 1185, 1191 (3d Cir. 1986)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 972 F.Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 110, 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## II.    BACKGROUND

### A.  Procedural History

Plaintiff filed applications for Child Disability Benefits ("CDB") and Supplemental Social Security Income benefits ("SSI") on October 16, 2015, with an alleged disability onset

date of January 1, 1991. (R. 115–116, 137–138, 199–205). Plaintiff alleged that bipolar disorder, depression, anxiety, and attention deficit hyperactivity disorder rendered him disabled. (R. 17). The state agency responsible for disability determinations denied Plaintiff's claim at the initial and reconsideration stages. (R. 13, 139–47,155–60). Plaintiff requested a hearing before an ALJ, and a hearing was held before ALJ Jennifer Pustizzi on July 18, 2019. (R. 62–78). A supplemental hearing was held before the same ALJ on October 30, 2019. (R. 50–60). On January 22, 2020, ALJ Pustizzi found Plaintiff not disabled. (R. 10–25). Plaintiff then filed a Request for Review of Hearing Decision with the Appeals Council on March 25, 2020. (R. 197). The Appeals Council issued an Order, dated February 5, 2021, wherein the Request for Review was denied. (R. 1–5).

The ALJ's decision, dated January 22, 2020, became the final decision of the Acting Commissioner of Social Security when the Appeals Council denied the Plaintiff's Request for Review on February 5, 2021. Plaintiff then commenced the present action, requesting judicial review pursuant to 42 U.S.C. § 405(g).

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 1991, resolving step one in Plaintiff's favor. (R. 16). At step two, the ALJ found that Plaintiff had the following medically determinable impairments: bipolar disorder, attention deficit hyperactivity disorder, and a mild intellectual disability. (*Id.*). However, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments. (*Id.*). Therefore, the ALJ found that Plaintiff was not disabled from January 1, 1991, through the date of the decision. (R. 20).

    B. Relevant Medical Evidence
        i. Dr. Broska

Dr. Arlene Broska evaluated Plaintiff on September 11, 2008, in connection with a prior application for disability benefits. (R. 390, 19). Dr. Broska opined that Plaintiff could follow and understand simple directions and instructions, perform simple and complex tasks independently, maintain attention and concentration, and learn new tasks. (R. 390). She further found that he may not make appropriate decisions, relate adequately with others, or appropriately deal with stress. (R. 390). Dr. Broska reported diagnoses of cannabis abuse, alcohol abuse in partial remission, and unspecified personality disorder with antisocial features. (R. 390).

   ii. **Dr. Pace**

Dr. Daniel Pace performed an Intelligence Evaluation of Plaintiff October 2, 2008, in connection with a prior application for disability benefits. (R. 392, 19). Plaintiff's score on the full-scale intelligence evaluation was 75, placing Plaintiff "within the borderline range of intelligence functioning." (R. 393). Dr. Pace found that Plaintiff could follow and understand simple directions and perform simple tasks, maintain attention and concentration, and maintain a regular schedule. (R. 394). Dr. Pace further found that Plaintiff may be able to make some appropriate work-related decisions, so long as they are not complex, but he may not be able to appropriately deal with stress. (R. 394). Dr. Pace concluded that Plaintiff's impairments "may significantly interfere with the claimant's ability to function on a daily basis." (R. 394). Dr. Pace reported diagnoses of unspecified depressive disorder and borderline intellectual functioning, as well as a history of alcohol abuse and marijuana abuse. (R. 394).

   iii. **Dr. Primavera**

Dr. Joseph Primavera performed a Psychological and Intelligence Evaluation of Plaintiff on May 13, 2015. (R. 421). Dr. Primavera noted that Plaintiff last worked in 2000 in a warehouse, where he worked for about two weeks and left the job because he did not get along

with the employees. (R. 421). Plaintiff reported to Dr. Primavera difficulty with falling and staying asleep, loss of appetite, anxiety-related symptoms, racing thoughts, explosive temper, poor impulse control, and poor social judgment. (R. 421). Plaintiff also reported auditory hallucinations, although he was unable to describe them. (R. 422). Dr. Primavera's intelligence evaluation resulted in a full-scale IQ result of 72, falling "within the extremely low to low average range." (R. 424). He concluded Plaintiff would be "clinically considered to have a mild level of intellectual impairment." (R. 424). Dr. Primavera reported diagnoses of unspecified bipolar disorder, mild intellectual impairment, and antisocial personality disorder. (R. 425). Dr. Primavera found Plaintiff was mildly impaired in his ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. (R. 426). He found Plaintiff was moderately impaired in his ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions.

### iv.  Dr. Mintzer

Dr. Lawrence G. Mintzer performed a Complete Mental Status Examination of the Plaintiff on November 16, 2015, after Plaintiff was referred by the Division of Disability Determination Services. Dr. Mintzer noted that Plaintiff reported being diagnosed with ADHD, bipolar disorder, and stress disorder, and was at the time taking Latuda, an antipsychotic medication used to treat bipolar disorder. (R. 441–42). Dr. Mintzer reported that Plaintiff "seemed a bit depressed" and "[h]is affect was mildly constricted." (R. 443). He found Plaintiff's "abstract thinking . . . somewhat poor," his "fund of knowledge is poor," and his "concentration was poor." (R. 443). Dr. Mintzer reported diagnoses of unspecified bipolar disorder, attention

deficit hyperactivity disorder, and mild intellectual disability. (R. 444). Plaintiff's limitations were found to be "moderate to severe in degree." (R. 444).

### v. Tree of Life Behavioral Services

Plaintiff was seen by Tree of Life Behavioral Services for a psychiatric evaluation on November 17, 2015. (R. 429). The report from Tree of Life is illegible in places. Plaintiff was prescribed Latuda by a psychiatrist. (R. 430). Plaintiff reported a "history of odd jobs," "never more than three months." (R. 433). The Mental Status Examination notes that Plaintiff's affective state was anxious, depressed, and constricted. (R. 435).

### C. Relevant Subjective and Lay Statements

In a Function Report filled out by Plaintiff, with help from his mother, Plaintiff reported that he eats and sleeps all day (R. 259); refuses to take medication (R. 261); is able to prepare meals using a microwave only (R. 261); does not perform any household chores (R. 261); is unable to manage driving a vehicle (R. 262); has problems getting along with family (R. 263); and has problems with memory, completing tasks, concentration, understanding, following instructions, and getting along with others (R. 263). He reported not being able to get along with authority figures "at all." (R. 265). He does not handle stress well at all. (R. 265). He reported sometimes being afraid of large crowds of people. (R. 265). He was unable to complete the Function Report because it had "too many questions" and "makes him frustrated." (R. 266).

A Function Report completed by Plaintiff's mother, Sharon Chapman, stated that Plaintiff spends all day with Chapman and stays in his room playing videogames and watching television all day. (R. 268). Chapman reported that Plaintiff's disability started when he was six years old and was frequently suspended from school. (R. 269). Chapman stated that he has problems taking care of himself, wearing the same clothes every day, taking showers only when

7

he is reminded, and refusing to shave or get his hair cut. (R. 269). Chapman reported Plaintiff does not help with household chores. (R. 270). Plaintiff does not spend any time with others. (R. 272). Chapman reported that "[t]hings have to be explained [to Plaintiff] more than once or watered down because he will not remember" and that Plaintiff "has no regard for law enforcement." (R. 273). She stated that Plaintiff does "not know how to handles stress" and "react[s] in a negative way." (R. 274).

### D.  Administrative Law Judge Decision

The ALJ's decision, issued on January 22, 2020, denied Plaintiff's application for benefits at step two, finding that Plaintiff's medically determinable impairments were not "severe." (R. 16). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 1991, the alleged onset date. (R. 16). Next, the ALJ found that Plaintiff had the following medically determinable impairments: bipolar disorder, attention deficit disorder, and a mild intellectual disability.

The ALJ next moved to step two of the sequential evaluation process. The ALJ found that Plaintiff does not have an impairment or combination of impairments that has significantly limited the ability to perform basic work-related activities for 12 consecutive months, and therefore Plaintiff does not have a severe impairment or combination of impairments. (R. 16). Because the ALJ found Plaintiff's impairments were not severe, she concluded Plaintiff had not been under a disability from January 1, 1991, through the date of the ALJ's decision (R. 21).

In finding Plaintiff's impairments were not severe, the ALJ reviewed the opinions of medical experts, Plaintiff's own subjective statements, and the statement of a lay witness, Plaintiff's mother. (R. 16–20). The ALJ considered Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms: that he has not sought work since

2017 "because his ability to mentally function needs to be further assessed"; that he was supposed to be on psychotropic medications but personal events have delayed the start of the medication; that his depression results in lack of motivation and his social anxiety causes it to be difficult for him to be in groups or crowds; and that he has difficulty remembering his appointments. (R. 17).

The ALJ considered Plaintiff's medical history, taking into account intelligence testing that was conducted in January 1997, which revealed a full scale IQ of 68. (R. 18). Plaintiff was hospitalized as an inpatient in September 1997 after he was arrested for becoming aggressive towards probation officers. (R. 18). Personality testing at that time revealed that Plaintiff was extremely angry, aggressive, depressed, and somewhat agitated, and had poor impulse control and judgment. (R. 18). During his hospitalization, Plaintiff participated in therapy and received psychotropic medication. (R. 18). He was discharged to an intensive day treatment program after two months in the hospital, but the ALJ noted there was no evidence he participated in the day treatment program. (R. 18). In 1999, due to "conduct problems," Plaintiff received a psychiatric evaluation, resulting in a recommendation for wraparound services to treat Plaintiff's mental impairments. (R. 18). The ALJ noted there was no evidence of treatment from 1999 to 2015. (R. 18). In 2015, Plaintiff sought outpatient mental health treatment, reporting symptoms of depressed mood, hopelessness, anhedonia, irritability, anger, and flashbacks to prior trauma. (R. 18). He was diagnosed with a mood disorder and received psychotropic medications. (R. 18). The ALJ noted there was no evidence he followed through with the treatment, (R. 18).

Given this medical history, the ALJ concluded that Plaintiff had medically determinable mental impairments. She then considered the effects of these impairments on the four broad functional areas set out in 20 CFR, Part 404, Subpart B, Appendix 1 (also known as the

9

"paragraph B" criteria). (R. 18). First, she considered evidence of impaired functioning in understanding, remembering, or applying information. The ALJ noted that Plaintiff reported difficulty following instructions and remembering appointments, but noted that despite these difficulties, Plaintiff was able to graduate high school in June 2000 and "was only in special education classes from September 1996 to June 1997." (R. 18). The ALJ also noted Plaintiff's most recent full scale IQ score of 72, which is consistent with a mild intellectual impairment. (R. 18). The ALJ found Plaintiff has a mild limitation in understanding, remembering, or applying information.

Second, the ALJ considered evidence of impaired functioning in interacting with others. The ALJ noted that Plaintiff goes to the store regularly and that he reported talking to friends daily and spending time with his girlfriend and daughter. (R. 18). The ALJ concluded Plaintiff has a mild impairment in this functional area.

Third, the ALJ considered evidence of impaired functioning in concentrating, persisting, or maintaining pace. The ALJ noted that Plaintiff does not complete tasks and spends his day watching television, sleeping, cooking, and playing videogames. (R. 18–19). She also noted that Plaintiff's memory is intact. (R. 19). The ALJ concluded that Plaintiff has a mild limitation in this functional area.

Fourth, the ALJ considered evidence of impaired functioning in adapting or managing oneself. She noted Plaintiff reports no difficulty completing self care and can make simple meals, drive, shop, manage his own money, and take public transportation, but he does not perform household chores and he reportedly cannot handle stress or changes in routine. (R. 19). The ALJ noted, however, that there is no objective evidence to corroborate his reported difficulties

10

handling stress and changes in routine. (R. 19). The ALJ found that Plaintiff has a mild limitation in adapting or managing oneself. (R.19).

Because the ALJ found only mild limitations in each of the four functional areas, she concluded that Plaintiff has only a minimal limitation in his ability to do basic work activities and therefore his impairments are not severe. (R. 19). The ALJ accordingly found Plaintiff was not disabled and was not eligible for benefits. (R. 21).

### III. DISCUSSION

Plaintiff challenges step two of the ALJ's decision, in which the ALJ determined that Plaintiff's mental impairments were not severe. The question before us is whether there is "substantial evidence" supporting the ALJ's conclusion that Plaintiff's impairments are not severe. *Poulos*, 474 F.3d at 91. We find there is not and accordingly will remand for further proceedings.

"An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities," which include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(a), (b). The Third Circuit has stated repeatedly that "'[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims.'" *Zaccaria v. Commissioner*, 267 Fed. Appx. 159, 160 (3d Cir. 2008) (quoting *McCrea v. Commissioner*, 370 F.3d 357, 360 (3d Cir. 2004)); *see also Newell v. Commissioner*, 347 F.3d 541, 546 (3d Cir. 2003) ("If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue."). "Reasonable doubts on severity are to be resolved in favor of the claimant."

11

*Newell*, 347 F.3d at 547. Therefore, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." *McCrea*, 370 F.3d at 360. However, a denial at step two, as in any other step, must be upheld if it is supported by substantial evidence. *Id.* at 360–61.

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence on the record by substituting the ALJ's own lay judgment for the opinions provided by the specialists. (Pl. Br. 11). We agree. As described above, every physician who evaluated Plaintiff determined that his mental impairments interfered at least somewhat in each of the four functional areas. Yet the ALJ discounted much of this evidence because, according to her reasoning, the medical evidence "shows a history of mental illness, but little treatment for the same." (R. 19, 20). The ALJ noted that Plaintiff underwent an intake evaluation in August 2019 and was scheduled to start therapy in October 2019. (R. 17). The ALJ also noted that Plaintiff was supposed to be taking psychotropic medications but "personal events" delayed his starting the medication. (R. 17). However, the record shows a long history of treatment, even if that treatment was sporadic. Plaintiff spent two months hospitalized for inpatient treatment in 1997, during which time he received therapy and medication. (R. 18). Plaintiff continued taking the medication until 1998. (R. 18). In 2015, Plaintiff sought outpatient mental health treatment. (R. 18). Plaintiff was again prescribed medication by Tree of Life Behavioral Services in 2015. (R. 430).

We are not convinced that this record demonstrates a failure to seek treatment. It appears that Plaintiff has sought treatment several times since his alleged disability onset date. Even if this record does constitute a failure to seek treatment, the Third Circuit has stated that a lack of evidence of treatment for a claimant's alleged impairments does not necessarily "provide an adequate basis to support a conclusion" that the claimant is not disabled. *Newell*, 347 F.3d at

547. Indeed, the Commissioner has stated that an ALJ may not "find an individual's symptoms inconsistent with the evidence in the record" on the basis of a claimant's failure to regularly seek treatment "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3P, 2017 WL 5180304, at *9.

We conducted a thorough review of the administrative record and find that the ALJ failed to consider the possible reasons why Plaintiff did not regularly seek or comply with treatment for his impairments. Absent this inquiry, the ALJ was not permitted to determine that his refusal to take the medication was not "consistent with the degree of his . . . complaints." SSR 16-3P, 2017 WL 5180304, at *9. Because the ALJ's determination that Plaintiff's mental impairments were not severe was based solely on the ALJ's own opinion that Plaintiff received "little treatment" for his alleged mental impairments, we find the ALJ's conclusion at step two that Plaintiff's impairments were not severe is not supported by substantial evidence.

The ALJ further erred in her analysis of Plaintiff's subjective statements and the statements of the lay witness, Plaintiff's mother. The ALJ stated Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record, apparently because Plaintiff graduated high school and was only in special education classes for one academic year. (R. 17). However, the medical doctors who evaluated Plaintiff's intellectual abilities diagnosed him with borderline intellectual functioning and/or a mild intellectual disability. (R. 394, 425, 444). The ALJ cannot substitute her own opinion for the opinion of a physician who presents medical evidence. *Plummer v. Apfel*, 186 F.3d 335, 337 (3d Cir. 1999). The ALJ also noted that Plaintiff worked in 2017 and only stopped working because he moved. (R. 17). However, evidence on the record also shows that Plaintiff has never held a job for longer

than three months (R. 433) and the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 1991 (R. 16). Even if these potential inconsistencies did raise some doubt as to whether Plaintiff's impairments are severe, "[r]easonable doubts on severity are to be resolved in favor of the claimant." *Newell*, 347 F.3d at 547.

In evaluating the statements of Plaintiff's mother, Sharon Chapman, the ALJ assigned them "little weight, as they are lay opinions based on casual observation, rather than objective medical examination and testing. Further, it is potentially influenced by loyalties of family." (R. 17). These are not sufficient reasons to assign little weight to Chapman's statements. An ALJ should consider non-medical sources of information, including statements from family and friends. SSR 16-3P, 2017 WL 5180304, at *7. Indeed, the Third Circuit regularly considers the lay opinions of family members. *See, e.g.*, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983) (taking into consideration testimony of the claimant's mother); *Burnett v. Comm'r*, 220 F.3d 112 (3d Cir. 2000) (taking into consideration testimony of the claimant's husband). The Commissioner's brief failed to cite any case law supporting the ALJ's justifications for discounting Plaintiff's mother's statements. (ECF No. 22 at 11). It is difficult to imagine a lay witness with more relevant information regarding a disability benefits application than the family members who reside with and provide care for the claimant. The ALJ erred in failing to provide adequate reasons to discount Chapman's testimony.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Plaintiff's application for benefits is **VACATED** and **REMANDED** for further administrative proceedings consistent with this Opinion. An Order follows.

Dated: 3/29/2023                                          /s/ Robert B. Kugler
                                                                           ROBERT B. KUGLER
                                                                           United States District Judge